FILED
2020 Dec-29  PM 04:43
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MICHAEL WAYNE KEETON,

      PLAINTIFF,

v.

                                 Case No.:

EQUIFAX INFORMATION
SERVICES, LLC, EXPERIAN
INFORMATION SOLUTIONS, INC.,        ***JURY TRIAL DEMANDED***
MONEYLION, INC. AND TRANS
UNION, LLC,

      DEFENDANTS.

## COMPLAINT

Plaintiff Michael Wayne Keeton ("Plaintiff"), by and through the undersigned counsel, and with knowledge as to Plaintiff's own acts, upon information, belief, and investigation of counsel as to the acts of others, believing such allegations have evidentiary support after a reasonable opportunity for further investigation or discovery alleges against Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc., MoneyLion, Inc.[1] and Trans Union, LLC as follows:

## PRELIMINARY STATEMENT

---

[1] Defendants Equifax Information Services, LLC, Experian Information Solutions, Inc. and Trans Union, LLC are referred to collectively as the CRA Defendants.

1.     This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §§ 1681, *et seq*. ("Fair Credit Reporting Act" or "FCRA").

2.     Indeed,

> Credit is the lifeblood of the modern American economy, and for the American consumer access to credit has become inextricably tied to consumer credit scores as reported by credit reporting agencies. In 1970, the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA") was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 52 (2007). Towards that end, the FCRA requires a company that reports consumer credit information, referred to as a consumer reporting agency ("CRA"), to "adopt reasonable procedures for meeting the needs of commerce" which are "fair and equitable to the consumer." 15 U.S.C. § 1681(b).

*Burke v. Experian Info. Sols., Inc.*, No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *1 (E.D. Va. Mar. 18, 2011).

3.     Accordingly, and

> In recognition of the critical role that CRAs play in the credit markets and the serious consequences borne by consumers because of inaccurate information disseminated in consumer credit reports prepared by CRAs, Congress placed on a CRA what can only be described as very high legal duties of care, set forth, as they apply to this case, in 15 U.S.C. §§ 1681e(b), 1681i(a)(1)(A), and 1681i(a)(3)(A).

*Burke v. Experian Info. Sols., Inc*., No. 1:10-CV-1064 AJT/TRJ, 2011 WL 1085874, at *4 (E.D. Va. Mar. 18, 2011).

4.     Congress made the following findings when it enacted the FCRA:

2

(1) The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

(2) An elaborate mechanism has been developed for investigating and evaluating the credit worthiness, credit standing, credit capacity, character, and general reputation of consumers.

(3) Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers.

(4) There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy.

15 U.S.C. § 1681(a)(1-4).  Thus, one of the fundamental purposes of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information in accordance with the requirements of this subchapter."  15 U.S.C. § 1681(b). Accordingly, "[t]he FCRA evinces Congress' intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear 'grave responsibilities.'"  *Cushman v. Trans Union*, 115 F.3d 220, 225 (3d Cir. 1997).

5.      On December 4, 2003, President George W. Bush signed into law the

3

Fair and Accurate Credit Transactions Act ("FACTA").[2]

> This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[3]

6.      The stated purpose of FACTA is "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes."[4]

7.      Towards this end, Congress provided "powerful new tools" to consumers, including the right to obtain fee credits reports due to identity theft. Likewise, the FCRA imposes duties on persons who furnish information to CRAs ("furnishers").  *See* 15 U.S.C. §§ 1681s-2(a), (2), (4), (5).   Specifically, furnishers must satisfy five duties after receipt of notice of a consumer dispute from a CRA. 15 U.S.C. § 1681s-2(b)(1)(A-E).

8.      The CRA Defendants have been sued thousands of times wherein an allegation was made that said defendants violated the FCRA.

---

[3]   https://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html   Last visited December 10, 2020.

[4]   https://www.govinfo.gov/content/pkg/PLAW-108publ159/pdf/PLAW-108publ159.pdf   Last visited December 10, 2020.

9.      Similarly, MoneyLion has been the subject of over 1,000 complaints made by consumers to the Better Business Bureau ("BBB").  The BBB added the following alert on its website after the BBB discovered a pattern of complaints received against MoneyLion since April 2019[5]:

> Pattern of Complaint:
>
> BBB files indicate a Pattern of Complaints concerning fulfillment of transactions, billing errors, and customer relations for MoneyLion, Inc. BBB has noted a significant spike in consumer complaints filed since April 2019, and consumers are telling BBB about the issues they are experiencing with their accounts and the company's customer service department. A number of consumers say they have problems making loan payments, experience errors or holds in transactions they attempt when using one of MoneyLion's financial products. Other customers claim the confusion and technical issues with their MoneyLion accounts have resulted in missed payments being reported to credit bureaus; some of which consumers claim are erroneous and have to be disputed. Many consumers allegedly attempt to contact the company to resolve their problems but end up frustrated and without resolution by the lack of communication by the company.
>
> As of June 2020, MoneyLion Inc. has responded to BBB and provide an explanation of a number of measures which it has implemented to address its customer experience, such as enhanced in-app self-service and upgraded features, new customer service partnership aimed at more accurate service and less wait times, introduction of new online Help Center with automated chatbot, as well as revised FAQs and streamlined membership terms and levels of products.

10.     Notwithstanding thousands of consumer complaints, the sale of consumers' most private and sensitive personal and financial information is a multi-

---

[5] https://www.bbb.org/us/ny/new-york/profile/consumer-finance-companies/moneylion-inc-0121-165324 Last visited December 28, 2020.

billion-dollar industry for the CRAs and MoneyLion's primary source of revenue –
making loans to consumers.

11.     Experian's parent corporation, Experian plc, reported $4.66 billion in
revenue in 2018.[6]

12.     Equifax reported more than $3.4 billion in operating revenue in its
annual report for year ending in 2018.[7]

13.     Trans Union reported over $2.3 billion in revenue for year ending
2018.[8]

14.     MoneyLion, Inc. ("MoneyLion"), a privately held corporation, "raised
$160 million in funding, giving it a valuation of nearly $1 billion" in 2019.[9]

## JURISDICTION & VENUE

15.     This Court has jurisdiction pursuant to 15 U.S.C. § 1681p and 28 U.S.C
§ 1331.

16.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

---

[6]     https://www.experianplc.com/media/3529/experian-2018-annual-report.pdf    Last    visited
December 29, 2020.

[7]     https://investor.equifax.com/~/media/Files/E/Equifax-IR/Annual%20Reports/2018-annual-
report.pdf Last visited December 29, 2020.

[8]     https://investors.transunion.com/~/media/Files/T/Transunion-IR/annual-reports/2018/annual-
report-2018.pdf Last visited December 29, 2020.

[9]     https://www.forbes.com/sites/donnafuscaldo/2019/07/23/moneylion-raises-160-million-at-a-
valuation-nearing-1-billion/?sh=3686b128a527 Last visited December 29, 2020.

## PARTIES

17.    Plaintiff Michael Wayne Keeton ("Plaintiff") is an adult individual and a resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1681a(c).

18.    Defendant Equifax does business in this judicial district and is a Georgia corporation with its principal place of business located at 1550 Peachtree Street NW, Atlanta, Georgia 30309.  Equifax is a CRA as defined by 15 U.S.C. § 1681a(f).

19.    Defendant Experian does business in this judicial district and is an Ohio corporation with its principal place of business located at 475 Anton Blvd Costa Mesa, California 92626.  Experian is a CRA as defined by 15 U.S.C. § 1681a(f).

20.    Defendant MoneyLion, Inc. is a person who furnishes information to consumer reporting agencies under FCRA, 15 U.S.C. § 1681s-2[10], and conducts substantial and regular business activities in this judicial district.  MoneyLion is a Delaware corporation with its principal place of business located at 30 W 21st Street FL 9, New York, New York 10010-6957.

21.    Defendant Trans Union does business in this judicial district and is a Delaware corporation with its principal place of business located at 555 W Adams

---

[10] Plaintiff is making a claim against MoneyLion under § 1681s-2(b).  Plaintiff is not making a claim against said defendant under § 1681s-2(a).

St., Chicago, Illinois 60661-5753. Trans Union is a CRA as defined by 15 U.S.C. §

1681a(f).

## FACTUAL ALLEGATIONS

22.     Plaintiff is a victim of identity theft.

23.     In or around January 2019, an impostor applied for and opened

accounts with MoneyLion.

24.     Upon information and belief, some of the personal identifying

information used in connection with the applications for credit purportedly

concerned Plaintiff.

25.     Plaintiff did not apply for or authorize someone on their behalf to apply

for loans with MoneyLion.

26.     Plaintiff did not receive any goods, benefits or services from

MoneyLion in connection with the fraudulent accounts.

27.     MoneyLion credit reported false information in connection with at least

one of the fraudulent accounts.

28.     Thereafter, the CRA Defendants prepared consumer reports related to

Plaintiff that included the inaccurate information.

29.     The inaccurate information includes but is not limited MoneyLion

partial account numbers 4280 ("Account 1") and 4281 ("Account 2")(collectively

referred to as the "inaccurate information").

30.     Accounts 1 and 2 were credit reported by MoneyLion to the CRA Defendants as derogatory, with past due balances and with the status "charge off."

31.     The inaccurate information harms Plaintiff's credit reputation because the accounts do not accurately depict Plaintiff's credit history or creditworthiness, or both.

32.     Plaintiff reported the identity theft to the Alabaster Police Department.

33.     The Alabaster Police Department categorized the type of incident as "Identity Theft."

34.     The police report included the police officer's name and badge number.

35.     Equifax prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.   Plaintiff disputed the inaccurate information to Equifax. Equifax did not delete or reinvestigate all of the disputed items of information.   On at least one occasion, Equifax failed to send Plaintiff its dispute results.

36.     Alternatively, Equifax failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

37.     Plaintiff requested Equifax to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute.   On at least one occasion, Equifax failed to provide Plaintiff with the steps it undertook while reinvestigating the disputed items of information.

38.     Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file.  On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file.

39.     Plaintiff requested Equifax to provide Plaintiff with Plaintiff's file due to fraud.  On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

40.     Plaintiff requested Equifax to provide Plaintiff with his file due to fraud and supplied Equifax with a copy of an identity theft report.  On at least one occasion, Equifax failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

41.     Plaintiff provided Equifax with an identity theft report in support of Plaintiff's dispute of the inaccurate information.  Equifax failed to block the inaccurate information after receipt of an identity theft report from Plaintiff.

42.     Upon information and belief, Equifax received a fraud block notification for Account 1 or Account 2, or both from Experian. Notwithstanding, Equifax did not block Account 1 or Account 2, or both, on Plaintiff's file.

43.     Experian prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.  Plaintiff disputed the inaccurate information to Experian. Experian did not delete or reinvestigate all of the disputed items of information.

44.     Alternatively, Experian failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

45.     Plaintiff requested Experian to provide Plaintiff with Plaintiff's file. On at least one occasion, Experian failed to provide Plaintiff with Plaintiff's file.

46.     Plaintiff requested Experian to provide Plaintiff with Plaintiff's file due to fraud.  On at least one occasion, Experian failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

47.     Plaintiff requested Experian to provide Plaintiff with his file due to fraud and supplied Experian with a copy of an identity theft report.  On at least one occasion, Experian failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

48.     Upon information and belief, after Experian received an identity theft report from Plaintiff, Experian provided a fraud block notification to Equifax and Trans Union for Account 1 or Account 2, or both.

49.     Trans Union prepared and issued consumer reports concerning Plaintiff to third parties that included the inaccurate information.  Plaintiff disputed inaccurate information to Trans Union. Trans Union did not delete or reinvestigate all of the disputed items of information.  On at least one occasion, Trans Union failed to send Plaintiff its dispute results.

50.    Alternatively, Trans Union failed to consider all relevant information and perform a reasonable reinvestigation of the disputed items of information.

51.    Plaintiff requested Trans Union to provide Plaintiff with the steps it undertook while reinvestigating Plaintiff's dispute.  On at least one occasion, Trans Union failed to provide Plaintiff with the steps it undertook while reinvestigating the disputed items of information.

52.    Plaintiff requested Trans Union to provide Plaintiff with his file.  On at least one occasion, Trans Union failed to provide Plaintiff with Plaintiff's file.

53.    Plaintiff requested Trans Union to provide Plaintiff with Plaintiff's file due to fraud.  On at least one occasion, Trans Union failed to provide Plaintiff with his file in response to Plaintiff's request.

54.    Plaintiff requested Trans Union to provide Plaintiff with Plaintiff's file due to fraud and supplied Trans Union with a copy of an identity theft report.  On at least one occasion, Trans Union failed to provide Plaintiff with Plaintiff's file in response to Plaintiff's request.

55.    Plaintiff provided Trans Union with an identity theft report in support of Plaintiff's dispute of the inaccurate information.  Trans Union failed to block all of the inaccurate information after receipt of an identity theft report.

56.    In response to Plaintiff's disputes, the CRA Defendants did not contact third parties, including but not limited to the Alabaster Police Department, concerning the accuracy of the disputed information.

57.    The CRA Defendants also did not review underlying account documents for each account contained in Plaintiff's file or the subject of Plaintiff's disputes, or both, such as the applications for credit.

58.    The CRA Defendants did not conduct any handwriting analysis on Plaintiff's signature or the signature on the applications for the accounts.

59.    The CRA Defendants did not make a reasonable inquiry into the disputed information.

60.    The CRA Defendants did not review all relevant information provided by Plaintiff related to the disputed information.

61.    At best, the CRA Defendants verified the false information by confirming some of Plaintiff's personal identifying information with some of the personal identifying information reported by the data furnishers who supplied the disputed information.

62.    The CRA Defendants failed to modify or delete all of the inaccurate information.

63.    Despite Plaintiff's exhaustive efforts to date, the CRA Defendants have nonetheless deliberately, willfully, intentionally, recklessly and negligently

repeatedly failed to perform reasonable reinvestigations of the above disputes as required by the FCRA.

64.    Plaintiff disputed the inaccurate information directly to MoneyLion.

65.    Plaintiff provided MoneyLion with a copy of the Alabaster Police report.

66.    MoneyLion received the Alabaster Police Department report.

67.    Plaintiff provided MoneyLion with a copy of a notarized Identity Theft Victim's Complaint and Affidavit.

68.    MoneyLion received the notarized Identity Theft Victim's Complaint and Affidavit.

69.    In response, MoneyLion acknowledged, via email, that Plaintiff was not responsible for Account 2 and that "[t]his loan has now been closed by our fraud department following a complete fraud investigation."

70.    Notwithstanding, MoneyLion continued to report Account 1 or Account 2, or both, to the CRA Defendants and did not report the accounts with the appropriate account in dispute code to the CRAs.

71.    Plaintiff disputed the inaccurate information to Equifax, Experian, or Trans Union.

72.    Equifax, Experian, or Trans Union notified MoneyLion of the disputed information.

73.     MoneyLion notified Equifax, Experian, or Trans Union that it verified the disputed information.

74.     As a part of MoneyLion's FCRA investigation, it did not:

a.      contact Plaintiff concerning the accuracy of the disputed information;

b.      contact third parties, including but not limited to the Alabaster Police Department, concerning the accuracy of the disputed information;

c.      review underlying account documents, such as any applications for credit;

d.      conduct any handwriting analysis on Plaintiff's signature or the signatures associated with the account, and in its own records;

e.      make a reasonable inquiry into the disputed information, including a review of the police report supplied by Plaintiff;

f.      review all relevant information provided by a consumer reporting agency pertaining to the disputed information;

g.      modify or delete the false account information; or,

h.      mark or identify the accounts as in dispute.

75.     At best, MoneyLion verified the false information by confirming some of Plaintiff's personal identifying information related to the accounts with some of the personal identifying information reported by the CRA who notified MoneyLion of Plaintiff's dispute.

76.    MoneyLion notified at least one CRA that its reporting of the inaccurate information was accurate on no less than .

77.    MoneyLion notified at least one consumer reporting agency that its reporting of the inaccurate information reported was accurate after receipt of a block notification from a consumer reporting agency.

78.    MoneyLion did not conduct a reasonable investigation with respect to the disputed information.

79.    As of result of the defendants' conduct, Plaintiff has suffered unique and distinct actual damages in the form of harm to credit reputation and credit score, out-of-pocket expenses, interference with Plaintiff's normal and usual activities and emotional distress, including anxiety, frustration, embarrassment and humiliation.

80.    At all times pertinent hereto, the defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the defendants herein.

81.    At all times pertinent hereto, the conduct of the defendants, as well as that of their agents, servants and/or employees, was intentional, willful, reckless, and in grossly negligent disregard for federal laws and the rights of the Plaintiff herein.

82.    The defendants' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the serious and distinct injuries to the Plaintiff

that are outlined more fully above and, as a result, the defendants are liable to the Plaintiff for the full amount of statutory, actual and punitive damages, along with the attorney's fees and the costs of litigation, as well as such further relief as may be permitted by law for their violations of federal law.

## COUNT ONE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Equifax)

83.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

84.    Equifax negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, c-2 and i.

85.    Alternatively, Equifax willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, c-2 and i.

86.    As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT TWO – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Experian)

87.    Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

88.   Experian negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

89.   Alternatively, Experian willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1 and i.

90.   As a result of Experian's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

### COUNT THREE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against Trans Union)

91.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

92.   Trans Union negligently failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, c-2 and i.

93.   Alternatively, Trans Union willfully failed to comply with the requirements of the FCRA, including Sections 1681e(b), g, c-1, c-2 and i.

94.   As a result of Trans Union's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT FOUR – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against MoneyLion)

95.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

96.     MoneyLion negligently failed to perform a reasonable investigation of the disputed information pursuant to Section 1681s-2(b)(A).

97.     Alternatively, MoneyLion willfully failed to perform a reasonable investigation of the disputed information pursuant to Section 1681s-2(b)(A).

98.     As a result of MoneyLion's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT FIVE – VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against MoneyLion)

99.     Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

100.   MoneyLion negligently failed to review all relevant information from the CRAs related to Plaintiff's disputes pursuant to Section 1681s-2(b)(B).

101.   Alternatively, MoneyLion willfully failed to review all relevant information from the CRAs related to Plaintiff's disputes pursuant to Section 1681s-2(b)(B).

102.   As a result of MoneyLion's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## COUNT SIX - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against MoneyLion, 15 U.S.C. 1681 § 1681s-2(b)(1)(A))

103.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

104.   In the past two years, MoneyLion failed to fully and properly investigate Plaintiff's disputes, pursuant to § 1681s-2(b)(1)(A).

105.   As a result of MoneyLion's willful failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury pursuant to § 1681o.  In the alternative, as a result of MoneyLion's negligent failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual damages in an amount to be determined by the jury pursuant to § 1681n.

## COUNT SEVEN - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against MoneyLion, 15 U.S.C. 1681 § 1681s-2(b)(1)(B))

106.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

107.   In the past two years, MoneyLion failed to review relevant information provided by a CRA, pursuant to § 1681s-2(b)(1)(B).

108.   As a result of MoneyLion's willful failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury pursuant to § 1681o.  In the alternative, ss a result of MoneyLion's negligent failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which Plaintiff seeks actual damages in an amount to be determined by the jury pursuant to § 1681n.

## COUNT EIGHT - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (Against MoneyLion, 15 U.S.C. 1681 §§ 1681s-2(b)(1)(C-D))

109.   MoneyLion negligently failed to report the results of its investigations, if any, with the appropriate account in dispute code pursuant to Sections 1681s-2(b)(1)(C-D).

110.   Alternatively, MoneyLion willfully ailed to report the results of its investigations, if any, with the appropriate account in dispute code pursuant to Sections 1681s-2(b)(1)(C-D).

111.   As a result of MoneyLion's failure to comply with the requirements of the FCRA, Plaintiff suffered actual damages, described more fully above, for which

Plaintiff seeks actual, punitive and statutory damages, in an amount to be determined by the jury, plus attorneys' fees and costs.

## JURY DEMAND

112. Plaintiff requests a jury trial on all claims.

## PRAYER

Wherefore, Plaintiff prays for judgment against the defendants as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Third Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and

    4.  Attorneys' fees and costs.

On the Fourth Claim for Relief:

    1.  Actual damages to be determined by the jury;

    2.  Punitive damages to be determined by the jury;

    3.  Statutory damages to be determined by the jury; and

    4.  Attorneys' fees and costs.

On the Fifth Claim for Relief:

    1.  Actual damages to be determined by the jury;

    2.  Punitive damages to be determined by the jury;

    3.  Statutory damages to be determined by the jury; and

    4.  Attorneys' fees and costs.

On the Sixth Claim for Relief:

    1.  Actual damages to be determined by the jury;

    2.  Punitive damages to be determined by the jury;

    3.  Statutory damages to be determined by the jury; and

    4.  Attorneys' fees and costs.

On the Seventh Claim for Relief:

    1.  Actual damages to be determined by the jury;

    2.  Punitive damages to be determined by the jury;

    3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.

On the Eighth Claim for Relief:

1.  Actual damages to be determined by the jury;

2.  Punitive damages to be determined by the jury;

3.  Statutory damages to be determined by the jury; and

4.  Attorneys' fees and costs.


Respectfully submitted,

*/s/ **Micah S. Adkins***
Micah S. Adkins
(ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
1025 Westhaven Blvd., Suite 220
Franklin, Tennessee 37064
Telephone:   (615) 370.9659
Facsimile:    (205) 208.9632
Email: MicahAdkins@ItsYourCreditReport.com
*COUNSEL FOR PLAINTIFF*
*MICHAEL WAYNE KEETON*